NEWYORK,
May, 1812.

JACKSON
v.
WILLSON.

JACKSON, *ex dem.* BANYAR AND OTHERS, *against* WILLSON
AND OTHERS.

A patent was granted, in 1761, which included also lands granted by a patent, dated in 1737, and the second patent recited the first, and the proprietors of the second patent, who had made purchases under the first, made a partition of the lands held under the second, excepting two lots, which were included within the boundaries of the first patent.

In an action of ejectment, the plaintiff claimed the two lots under the patent of 1761, and the defendants claimed to hold under A. who claimed under B., one of the patentees, named in that patent.

It was held, that the recital of the former patent, being of a particular fact, directly affirmed, estopped the plaintiff from denying the existence of such prior patent; that the mere fact that B. was a patentee in the patent of 1761, was not sufficient to prove that he held the two lots under that patent; the omission to divide the two lots, being evidence of the sense of the proprietors of the second patent, that they did not claim those lots under it.

THIS was an action of ejectment. The material facts in the case are as follows:

At the trial, before Mr. Justice *Van Ness*, the lessors of the plaintiff gave in evidence letters patent, dated *July*, 1761, to *Isaac Sawyer, Jonathan Wells*, and fifty-nine other persons, commonly called the *Pittstown* patent: a release, dated 7th *September*, 1761, from *Joseph Wells* and forty-six others, patentees, of their undivided right to *Isaac Sawyer, Goldsbrow Banyar*, and four other persons, under whom the lessors claim the premises in question; a deed of partition dated the 26th *May*, 1763, between the last-mentioned six persons, whereby they made partition of the lands contained in the boundaries of the *Pittstown* patent, pursuant to a map thereunto annexed, excepting lots No. 53. and No. 54. the premises in question, which were laid down on the map, but not drawn for or divided, by such partition.

The deed of partition, after reciting, that by several grants, the parties thereto had obtained title, as tenants in common, to the *Pittstown* patent, and their agreement to make partition of the whole of the said tract, called *Pittstown*, and after specifying the division by ballot, and the lots drawn by the several parties, proceeded with the several releases to the respective parties, of all lands so laid out and divided into lots, parts and parcels of lots, on the map annexed, and drawn to their respective shares. It appeared also, by the same partition deed, that the boundaries of the *Pittstown* patent included, as well as other lands, all or most of the lands granted by letters patent, dated the 19th *May*, (1737,) 10 *Geo*. II. to *D. A. Schuyler* and others, commonly called the *Synhanesset* patent, which included, according to the map, lots No. 53. and 54. the premises in question.

The plaintiff then deduced, by proof, a regular title to his lessors, to eight ninth parts of the patent of *Pittstown*.

It was also proved, by a surveyor, that the defendants were in possession of lots No. 53. and 54. and that they were within the bounds of *Pittstown*.

*Benjamin Smith,* a witness for the defendants, testified that his father, in 1773, took possession of lot No. 54. claiming title under *Robert* and *John Leake;* and *John Griffiths* was, at the same time, in possession of lot No. 53. The father of the witness continued in possession of No. 54. three years, and cleared about 20 acres. Various persons, in succession, had the possession, afterwards, who claimed to hold as owners. The witness did not know under whom the *Leakes* claimed, but he understood that their title and that of the *Pittstown* patent were the same. The defendants had not been in possession 20 years.

Another witness testified, that about 40 years ago, his father had possession of lot No. 53. under *Isaac Sawyer,* and held it about two years; that *John Griffith,* afterwards, had possession, and claimed the land as his own. The witness understood that the lands were in *Pittstown.*

The defendants gave in evidence a quitclaim deed, dated *December* 1, 1795, from *Nathaniel Purdy* to *Ebenezer Willson,* one of the defendants, for an undivided moiety of lot No. 53. and lot No. 35. which were stated to have been forfeited, by the attainder of *Robert Leake;* and a quitclaim deed from *Levinus Lansing,* one of the lessors, to *Ebenezer Willson,* dated *December* 2, 1795, for the west half of lot No. 54. also stated to have been forfeited by the attainder of *Robert Leake,* which deeds contained a proviso against any warranty of title. The defendants also gave in evidence a deed from *Martha Norton* to *E. Willson,* dated 10th *December,* 1797, for the undivided half part of lots No. 53. and 54. with covenants of warranty as to the title.

Another witness testified, that in 1780, one *Dunham* took possession of lot No. 54. under *Robert* and *John Leake,* and that the possession was in other persons, successively, until the defendants took possession of the west half, in 1794, and of the east half in 1796; that about 15 years ago, rent was demanded by the heirs of *Leake.* That *E. Willson,* one of the defendants, bought lot No. 53. in the year 1791, of one *Purdy,* who purchased it of the widow of *Isaac Sawyer;* rents were collected by *R. B. Norton,* as heir of *John Leake* from *Dunham,* who had paid rent to *Leake* in his lifetime.

*Thomas Sampson* testified that the *Leakes* claimed under *Pittstown,* and under *Wells,* one of the original patentees. One of the heirs of *John Leake,* since the late war, re-entered on lot

NEWYORK, No. 54. for rent.  Both lots 53. and 54. had been possessed by
May, 1812.  tenants of the *Leakes*, for above 24 years.

JACKSON          The judge declared his opinion to the jury, that both parties
v.        claimed under the *Pittstown* patent; that the defendants had
WILLSON.  given in evidence no paper title adverse to the *Pittstown* proprie-
tors, until the deed from *Lansing* to *E. Willson*, in 1795; that
the *Leakes* appeared without any regular title, claiming under the
*Pittstown* patent, and that the subsequent settlers had claimed
under the *Leakes;* that if the *Leakes* had title, it appeared to
have been derived from *Wells*, one of the original proprietors;
and that as the lots in question had not been divided, the *Leakes*,
and those deriving title under them, could only be tenants in com-
mon, with the other proprietors; that their possession could not
operate against the lessors of the plaintiff; and that the plaintiff
was entitled to recover on the rights of his several lessors, except-
ing that of *Lansing*, which was barred by his deed.  The jury
accordingly found a verdict for the plaintiff.

A bill of exceptions was tendered to the opinion of the judge,
who sealed the same, pursuant to the statute.

*Bliss* and *Foot*, for the defendants, contended, 1. that the lessors,
by their own showing, were not entitled to recover.  They proved
no title in themselves.  Their map shows that lots No. 53. and 54.
lie within the *Synhanesset* patent.  Their patent and partition both
recognise the title under that patent, as valid; and the lessors could
only derive title, therefore, under *Schuyler and others*.  Though
the *Pittstown* patent covers lots 53. and 54. yet as it recognises
the validity of the prior patent to *Schuyler and others*, it could give
no title to the lessors to lands lying within the other patent.  It
was necessary for the lessors to show that the premises in ques-
tion were within the lots which they had purchased of *Schuyler*.
As they have undertaken to enumerate the lots purchased of
*Schuyler*, it is an admission that they claimed no more; and their
own witness showed that the premises lay within lot No. 2. which
was not purchased of the proprietors of *Pittstown*.

2. The right of the lessors to recover, was barred by an undis-
turbed possession of the defendants, and those under whom they
claim, adverse to the lessors, for near 30 years.  This is esta-
blished by the testimony given at the trial.

If the lots originally belonged to the patentees of *Pittstown*, in
common, the conduct of the persons in possession, for so long

a time, amounted to an *ouster* of the other proprietors, and severed the tenancy in common, as to the lots in question; and the possession has been adverse to the lessors for more than twenty years past. If one tenant in common *ousts* his companion of the possession, the other may maintain ejectment against him;[*] and confession of lease, entry, and ouster in ejectment is sufficient, without proving an actual ouster.[†] A possession for 26 years, by a tenant in common, has been held sufficient evidence to be left to a jury to presume an ouster or adverse possession.[‡]

NEW-YORK,<br>
May, 1812.<br>
JACKSON<br>
v.<br>
WILLSON.<br>
[*] <i>Litt.</i> s. 322.<br>
<i>Com. Dig.</i> Estate, (K. 8.)<br>
[†] <i>Burr.</i> 1895.<br>
<i>Cowp.</i> 27. 1<br>
<i>East,</i> 568.<br>
[‡] <i>Fairclaim</i> v.<br>
<i>Shackleton,</i> 5<br>
<i>Burr.</i> 2604.

*Milchell* and *Van Vechten,* contra, insisted that to render an adverse possession sufficient to toll the entry of the plaintiffs, it should be taken under a claim or colour of title, be hostile to that of the lessors of the plaintiff, and have been continued uninterruptedly from its commencement.[§] Here the defendants claim under the same title.[**]

There is no evidence of the *Synhanesset* patent, except the recital in the *Pittstown* patent. But such a recital is not conclusive. Whatever may have been the ancient notion on the subject, the received opinion, at the present day, is, that recital is *secondary* evidence, and admissible only when the recited deed is shown to be lost, or some other reason given for not producing the regular and best evidence of it.[††]

Where two claim by the same title, an adverse possession will not be presumed, so as to toll the entry of the other.[‡‡] And where a person enters under another, and transfers the possession, his grantee is always presumed to hold under the same title.[§§]

[§] 1 <i>Johns.<br>
Rep.</i> 156. 158.<br>
[**] 2 <i>Johns.<br>
Rep.</i> 234. &<br>
<i>Johns. Rep.</i><br>
390.<br>
<br>
<br>
[††] <i>Peake's<br>
Evidence,</i>113,<br>
114. c. 2 s. 4.<br>
<i>Ford</i> v. <i>Grey,</i><br>
6 <i>Mod.</i> 45.<br>
See also 3 <i>Ch.<br>
Cas.</i> 101. <i>Co.<br>
Litt.</i> 352. b.<br>
<i>Hard.</i> 120.<br>
<i>Vaughan,</i> 71.<br>
2 <i>Lev.</i> 108. 2<br>
<i>Roll. Abr.</i>678.<br>
2 <i>Vent.</i> 171.<br>
<i>Jenk.</i> 255.<br>
[‡‡] <i>Woodfall,<br>
Tenant,</i> 444.<br>
[§§] 1 <i>Caines'<br>
Rep.</i> 401. 4<br>
<i>Johns. Rep.</i><br>
212.

*Per Curiam.* The ground on which the defendants rest is, that the lessors of the plaintiff, by their own showing, in the recitals to the partition deed of 1763, admit an elder patent, covering the premises, and that although the recitals show a purchase of a part of this patent, there is no purchase of the premises stated. There is, then, a title existing out of the lessors, as they are estopped by the recital from denying the existence of such a prior patent. The recital is here of a particular fact directly affirmed. (*Shelley* v. *Wright, Willes's Rep.* 9.) But the title under which the defendants claim appears to have been derived from the *Leakes,* and they to have claimed under *Wells,* who was one of the *Pittstown* proprietors. The source of title set up by both parties would seem, at first view, to be the *Pittstown* patent. But

NEW YORK,
May, 1812.

the mere fact that *Wells* was a *Pittstown* patentee, is not sufficient to prove that he held the premises under that patent, when, by the plaintiff's own showing, the premises were covered by an older patent, and under which purchases had been made by the *Pittstown* proprietors. The omission to draw for and divide lots 53. and 54. is, of itself, evidence of the sense of the proprietors that the premises were not claimed by that patent. It ought to appear, clearly and positively, that *Wells* claimed the premises under the *Pittstown* patent, and transmitted such claims to the *Leakes*, before we can conclude that the *Leakes* possessed under that title, and as tenants in common with the other *Pittstown* proprietors. It is a more reasonable presumption, because it is in harmony with the rights and the facts disclosed by the partition deed, that *Wells* had purchased in the title under the *Synha-nesset* patent, and held under that title, and if so, the lessors of the plaintiff were not entitled to recover.

A new trial ought, therefore, to be awarded, with costs to abide the event of the suit.