## BABCOCK V. HOEY, *et ux.*

1. MORTGAGE OF A HOMESTEAD. It is not essential to the validity of a mortgage of property occupied as a homestead, in the execution of which both the husband and wife concur, to expressly describe the property as a homestead and to state that it is with reference to that fact that the conveyance is made. LOWE, C. J. *dissenting.*

### *Appeal from Dubuque City Court.*

### FRIDAY DECEMBER 28.

THE complainant by his bill seeks the foreclosure of a mortgage given by the defendants to secure the payment of certain promissory notes, executed by John Hoey alone. Hoey and wife in their answer claim the mortgaged premises as their homestead, and deny the right of the complainant to a foreclosure as prayed for. A decree was rendered for complainant and respondents appeal.

*Griffith & Knight* for the appellants, in addition to the sections of the Code bearing upon the subject, cited 7 Mass. 18; *Rodmyer* v. *Rodman*, 5 Iowa 426; *Blake* v. *Blake*, 7 Ib. 50; *Alley* v. *Bay*, 9 Ib. 509; 4 Kent. 164; *Wilkins* v. *French*, 20 Maine; *Crow, McCreary & Co.* v. *Vance*, 4 Iowa 434; 1 Greenl. Cr. Title 15, section 15; *Kitchell* v. *Burquin*, 21 Ill. 40; *Catlin* v. *Ware*, 9 Mass. 220; *Lufkin* v. *Curtis*, 9 Mass. 220; *Dickson, et al*, v. *Chorn, et al*, 6 Iowa 19; *Barnes* v. *Gay*, 7 Ib. 26.

*Bissell, Mills & Shiras* for the appellee, cited the following authorities: *Barnard* v. *Eaton*, 2 Cush. 304; 4 Kent 135; *Porter, et al*, v. *Green, et al*, 4 Iowa 571; *Burton* v. *Emerson, Shields & Co.*, 4 G. Greene 393; 2 Par. Cont. 380; 4 John. Ch. 437; Laws of 1852, page 67; 9 Calf. 294.

BALDWIN, J.[1]—The cause was submitted to the court below

---

[1] LOWE, C. J. dissenting.

upon the pleadings and upon an agreed statement of facts. It was agreed that the mortgaged premises were occupied by respondents as their homestead when the mortgage was executed and when this proceeding was commenced; that the debt was contracted by John Hoey alone since the passage of the homestead act, and after the mortgaged premises became the homestead of respondents; that the said Eliza M. Hoey never signed any other instrument in reference to said indebtedness but the said mortgage; that the fee simple title was in John Hoey, that the said Eliza had only her marital rights therein; that the said John Hoey had no other property subject to execution out of which the plaintiff could realize his claim.

The mortgage was duly signed and acknowledged by both husband and wife, the premises were described therein by numbers, metes and bounds, but it was not expressly stated that it was the homestead that was intended thereby to be transferred to complainant. The question presented by appellants for the consideration of this court is whether the homestead of respondents is liable to be sold under a mortgage of this character for the debt of the husband alone, or whether the husband and wife, when they executed and delivered to complainant the mortgage upon the homestead thereby waived its exemption from judicial sale.

Under our statute, the homestead of every head of a family is exempt from judicial sale, when there is no special declaration of the statute to the contrary. There are exceptions, however, to this general exemption. It is liable to be sold for taxes, under a mechanic's lien, for debts contracted prior to the passage of the homestead act, or to the purchase thereof, or for debts created by written contract by persons having the power to convey and expressly stipulating that the homestead should be liable therefor. It is also provided by section 1247 of the Code (sec. 2279 of the Revision) that a conveyance by such owner is of no validity unless the husband and wife, (if the owner is married,) concur in and sign

such conveyance. It is not claimed by the complainant that the homestead of the defendants is liable under either of the exceptions as above stated; but it is submitted that the mortgage sought to be foreclosed is a conveyance within the meaning of said section 1247, and that when the defendants concurred in and signed the same, they thereby waived their right of exemption, and when thus waived, their equity of redemption is liable to be foreclosed in the same manner as though the mortgaged property did not constitute the homestead.

Did the legislature, in the adoption of this section, intend to embrace mortgages within the meaning of the term *conveyance*? Giving to the word *conveyance* a construction according to the approved usage of language, or the peculiar and appropriate meaning it has received in law, would it not apply to, or include mortgages as well as absolute transfers of titles? "A mortgage is the *conveyance* of an estate by way of pledge for the security of a debt and to become void upon the payment of it." 4 Kent Com. 138. "A mortgage may be described to be a *conveyance* of lands by a debtor to his creditor," &c. Bouv. L. D. "*Mortuum vadium,* dead pledge, or mortgage, is where a debtor actually *conveys* lands to his creditor," &c. Walker's Am. L. 293. "A mortgage is a *conveyance* of property and passes it conditionally to the mortgagee." *United States* v. *Foster,* 2 Cranch. 358. "A mortgage is not only a lien for a debt, but it is something more, it is a *transfer* of the property itself as a security for the debt." *Conrad* v. *Atlantic Insurance Co.,* 1 Pet. 441. "A mortgage is the *conveyance* of an estate." 1 Hilliard on Mortgages, 2. "A mortgage not only creates a lien but operates to transfer to the mortgagee a qualified or conditional estate," &c.; and a "mortgagee is a purchaser within the meaning of our registry law." *Porter, et al,* v. *Green, et al,* 4 Iowa 571.

The authorities, without exception, speak of a mortgage as a conveyance. We are inclined to think that our legis-

Babcock v. Hoey, et ux.

lature regarded a mortgage as a conveyance within the meaning of this section, not only from the general signification of the word as applicable to mortgages, but by the use of the word in other sections of the Code, adopted at the same time this section was. In section 1232 the legislature provided that the form of a mortgage might be the same as a deed of *conveyance,* adding that it should be void on condition, &c. So also in section 1256 it is provided that the owner of a homestead may change the metes and bounds thereof, but such change should not prejudice *conveyances* or liens made or created previous thereto. What kind of conveyances are here referred to? Not absolute conveyances, because no change of boundaries by the owner of the homestead could prejudice the rights of the vendee where he had a title in fee simple. To say that it referred to any other than conditional conveyances, would render this section meaningless.

We also think that this court has regarded a mortgage as a conveyance and recognized the validity of a mortgage upon the homestead when the husband and wife concur in executing the same. The purchaser at the sale, under the foreclosure of a mortgage executed by a husband and wife, of their homestead, obtains a title good against a prior mortgage of the homestead executed by the husband alone, although in a suit to foreclose such prior mortgage the husband and wife are made parties and make no defense. *Alley* v. *Bay,* 9 Iowa 509. So also in the case of *Dickson, et al,* v. *Chorn, et al,* 6 Iowa 19, the right to incumber the homestead by a mortgage is clearly recognized. The court in their opinion say, " that Chorn and Dickson and their wives might at their option execute a mortgage upon their homestead to any creditor," &c. " The extent of the incumbrance in such case would be to secure the particular debt named," &c. Again, in speaking of the homestead, it is said, " that the law gives to these debtors the right to claim their property as exempt and sets it apart for the benefit of their families. By the *concurrence* of those who may convey it, it may be incumbered," &c. The right of the husband and wife

Babcock v. Hoey, et ux.

to hold their homestead exempt from judicial sale is a privilege conferred upon them by the statute, but it was not the intention nor had the legislature the power to deny the husband and wife the right to dispose of their homestead if they thought proper so to do. The wife has more than a dower interest in the homestead and it cannot be sold for the debts of her husband without her consent. But our statute confers upon her the right to dispose of her interest in real estate in the same manner as any other person. Section 1207. Hoey and his wife for the like consideration for which this mortgage was given, could have transferred absolutely to plaintiff their interest in the mortgaged premises, and thus placed their homestead beyond their control. If they had the power to convey absolutely, had they not the right to convey conditionally? Is not the lesser power included in the greater? To hold that no such power existed, would deny to the husband and wife the power to make such contract and dispose of their property as they might think would best subserve their interest.

We conclude that a mortgage is a conveyance within the meaning of section 1247 as above recited. And when the husband and wife concur in and execute a mortgage upon their homestead they thereby waive their right to hold the same as exempt from judicial sale.

A mortgage thus executed is valid and confers upon the mortgagee the right to foreclose the same as if it had been given upon any property other than the homestead.

Judgment affirmed.

WRIGHT, J.—It would have been equally, if not more satisfactory to me to have based the affirmance of this case upon the last exception contained in the first clause of section 1249 of the Code. As the foregoing opinion, however, places it upon another ground, I content myself with stating, that without being committed to all of the reasoning used, I concur in the conclusion.

Babcock v. Hoey, et ux.

Lowe, C. J. *dissenting.*—As the provisions of the home-stead law are of very great interest and importance to the people of this State, it is to be regretted that this court should be divided in sentiment in regard to its object and policy. Nevertheless, I have been unable to persuade myself that a majority of the court have reached a proper conclusion in the interpretation of its terms or true meaning; and therefore it is made my duty, by law, briefly to state the grounds of my dissent. Undoubtedly the primary object of this humane law, was to protect those members of the family who are least capable of protecting themselves (such as the wife and children) from the misfortunes that not unfrequently overtake the husband in business, in the vicissitudes of trade, in the recklessness of adventure, or in the more common habits of improvidence and dissipation. This object being patent from the whole scope and intendment of the law, it follows that that interpretation of its provisions which best accomplishes this object without doing violence to its express terms, is the one that should be adopted. This rule of interpretation admits of no departure. Now, to my mind, the construction given to the first five sections of this law by my associates, defeats its main purpose or policy.

The first section of this law, being section 1245 of the Code of 1851, declares that the homestead of every head of a family shall be exempt from judicial sale except as therein specified. These exceptions are all enumerated in two other sections, to-wit, sections 1248 and 1249. The first of these refers to taxes and mechanics' liens. Section 1249 reads as follows: "It (referring to the homestead) may also be sold on execution for debts contracted prior to the passage of the law, or prior to the purchase of such homestead, *or for those created by written contract executed by the persons having the power to convey, and expressly stipulating that the homestead is liable therefor.*"

It is only under these enumerated exceptions that the

homestead can be subjected to a judicial or forced sale. In the case at bar the homestead was ordered to be sold under the foreclosure of a mortgage, executed in the usual form without containing or having in it an express stipulation to the effect that the homestead should be liable for the debt described therein.

The question for the determination of the court is, whether such a mortgage falls within the above exceptions. I am myself clear in the opinion that it does not, for the reason that it does not conform in its execution and terms to the meaning and positive requirement of the last exception in section 1249. I do not mean by this declaration that a mortgage is not of the description of written contracts included in said section; on the contrary I think they are primarily alluded to, for the expression "*having the power to convey*," necessarily, *ex vi termini*, refers to that class of written contracts of indebtedness which are to be executed in the form of conveyances by the parties themselves. What can these be except mortgages and deeds of trust? We know that they constitute an important class of indebtedness and that judicial sales are constantly being made under them. I do not say that ordinary notes and bonds were not intended also to be embraced in this exception. This is quite probable. Yet I insist that debts in this form, judging from the natural import of the language employed, are not so distinctly meant or contemplated, as were mortgages or that class of debts created by written contracts which take the form of conveyances by way of pledge or security for the debt, because the words of the law are that they must be executed by the persons "*having the power to convey.*" I take it, therefore, that mortgages and deeds of trust were primarily intended to be included in this section.

This point established, the next question presented is, how shall the mortgage be executed in order to bring the homestead within the exception, so as to subject it to judicial sale? Surely, in the manner prescribed by the law.

itself, which, among other things, positively requires that the parties in executing the mortgage shall *expressly stipulate that the homestead shall be liable therefor*. Should not this provision of the law be insisted upon and enforced according to its plain terms and the intention of the legislature? We are not to presume that the law-making power intended to insert a useless provision that meant nothing and might be disregarded. Any interpretation, therefore, which has the effect to render a clause of the law nugatory or inoperative, can not be admitted.

Now it seems to me that we can not be at a loss to discover the true meaning and policy of this law, nor the motive which led to its enactment. It was to bring clearly within the contemplation of the parties executing the mortgage, (and especially the wife,) the *fact* that their homestead was to be rendered liable for the debt described therein, so that neither of them might be deceived or imposed upon or induced to sign an instrument which would endanger their homestead, without a distinct knowledge of the fact.

The thought expressed in this law, or the evil intended to be guarded against by it, is obvious. It is a well known fact that not one woman in fifty, perhaps, would recognize her homestead when simply described by its legal subdivisions, bounds or numbers. And hence she would be liable to be misled either by the artifices of others, or by her own negligence, whereas if her attention was directly challenged to the fact that she was incumbering her homestead, she might pause and reflect before she acted.

I presume it would be conceded that if the homestead was to be sold on an execution issued upon a judgment founded upon a note of hand signed by both husband and wife, but which did not contain the stipulation required by the law, that the sale would be illegal and would not divest the parties of their home if they chose to assert their rights. Well, does section 1249 make any distinction in this respect between a note and a mortgage? Certainly none, and it is

as little competent for the court to dispense with this requirement of the statute in the execution of one instrument as the other. But it is claimed that the legal effect of a mortgage executed with the ordinary legal description of a homestead, is the same as if it contained in words the stipulation in question; that is, that such a mortgage necessarily implies such a stipulation and the assent of the parties that the homestead should be liable, &c.

I have already anticipated in part the answer to this view of the subject in my allusions to the policy of this law, and the particular evils which were intended to be obviated. But conceding that such would be the legal intendment of the instrument, yet as a matter of fact we know that it is quite possible, to say the least, that this effect might be at variance with the actual intention of the parties, or without the actual assent of one or both, as for instance, where the wife failed to recognize her homestead by the legal description set out in the mortgage, and signed the same without knowing that her home would be liable by that act to be taken from her. Now, the policy of this law is to avoid this disagreement between the legal effect of the instrument and the actual assent or concurrence of the parties, and to secure their harmony by requiring in all cases of written liabilities for money intending to affect the homestead, that there should be an express covenant that the same should be liable for the debt. That this was the legislative intent, is too plainly expressed in words to admit of much doubt in my mind. With the policy of such a law the court has nothing to do. Nor are they at liberty to abridge or add to any law whatever, for this would be legislation.

The doctrine of the courts has always been that beneficial statutes, such as the one under consideration, should be liberally construed. The narrow construction above alluded to would fail to make effectual the object of this law, or reflect its true meaning.

The main ground, however, upon which the judgment below was affirmed in this case, is founded upon the construction given to section 1247 of the homestead act. It is claimed that a "mortgage is a conveyance within the meaning of said section, and when a husband and wife concur in and execute a mortgage upon their homestead they thereby waived their right to hold the same as exempt from judicial sale."

The reasons of my non-concurrence in this exposition of the homestead law will be briefly stated:

*First.* Section 1247 does not purport upon its face to be an exception to the general right of homestead exemption conferred by section 1245. It does not make the slightest reference to judicial or forced sales as sections 1248 and 1249 do, in which, really, are to be found all the exceptions to the general rights, which, in my opinion, were contemplated by the law. It evidently refers to ordinary alienations or conveyances of property by bargain and sale, the object of which was to protect the wife in the enjoyment of her homestead if she insisted upon it, against the voluntary conveyance of the husband without her concurrence and signature, in the same way and to the same extent that she is protected from judicial sales. In the absence of the provision contained in section 1247 the husband could sell and convey his homestead and give the purchaser possession whether his wife was willing and had signed the deed or not. But now, under this section, a deed of conveyance transferring the title and ownership of the homestead is invalid unless the husband and wife both join in the execution of the same. So that we find a sufficient reason for the enactment of this section without making it to include mortgages, the manner of executing which, in order to affect the homestead, is specially provided for in section 1247. If it should be asked why, in a deed conveying the title and ownership of the homestead, there is not the same necessity of an express stipulation, such as is required in a mortgage, to the effect

Babcock v. Hoey, et ux.

that the wife assents to the sale of the homestead as such; the reply is, first, that the legislature has not thought proper to require it; and secondly, the two instruments in their nature are different. Under the one the property may be taken for a debt; under the other the purchaser takes it, to be sure, but he gives back an equivalent which places it in the power of the parties to procure another home.

The position that section 1247 was not intended to include mortgages, derives additional strength from the consideration that under our Code of laws the legal character of a mortgage is essentially changed and simplified from what it was under the old law. Under our reformed system, a mortgage does not transfer to the mortgagee the legal title, the ownership, or the possession; but simply gives him a specific lien, or a security upon the land for the payment of a debt, while the legal estate or fee, the right of possession and use, all remain in and under the control of the mortgagor until sale after foreclosure, which has the effect to cut off his equity of redemption and to divest his title.

. The mortgagee, even after forfeiture or default in payment of the money could not maintain an action of right for the possession of the mortgaged premises prior to a foreclosure and sale, for the reason that he has no title upon which he could found such a suit. Very different was the nature of a mortgage under the law that generally prevailed before the adoption of the Code. Under it the mortgage created an estate on condition, passed the legal title at once to the mortgagee and gave him the right to sue for the debt, bring ejectment for possession, and foreclose in equity, all at the same time. It was because of these large powers, and especially the holding of the legal title and the right to maintain ejectment, that a mortgage was defined by the elementary writers as a conveyance, which always implies a transfer of the legal ownership. But this definition can have no application to a mortgage under our law, which gives to it no

other effect than that of a common lien, which is a mere inchoate right that may, to be sure, be strengthened into a title; but only through the medium of a judicial sale after foreclosure.

It is true, in the case of *Porter* v. *Green*, 4 Iowa 571, this court properly held that a mortgagee was a purchaser within the meaning of the recording acts of this State. This simply means that a mortgage duly executed, acknowledged and recorded protects a mortgagee to the same extent that a purchaser is protected by the recording of his deed, but not that the mortgagee takes the title and ownership of the property mortgaged in the same sense that a purchaser does under his conveyance.

In support of the view which I have been compelled to take of the homestead law, I would refer, in conclusion, to the case of *Kitchel* v. *Burquin, et ux*, 21 Ill. 42. The decision in that case was founded upon a statute which declared that a homestead to the value of $1000 should be exempt from levy and a forced sale, for debts contracted after a given period, by any householder having a family. Among the exceptions to this right mentioned in the statute, is that of a release or waiver by the parties interested, and in regard to this exception the law provides, that "no release or waiver of such exemption shall be valid unless the same shall be in writing, subscribed by such householder and acknowledged in the same manner as conveyances of real estate are by law required to be acknowledged."

As in the case at bar, which we have been discussing, the Illinois debtor and his wife had given a mortgage upon their homestead in the usual form and describing the property truly by its legal subdivisions, or metes and bounds. They pleaded, by way of defense, the homestead exemption. Upon the question whether the mortgage was a waiver, the court held the following language: "We think a formal release or waiver of the statute must be executed. It must appear that the privileges and advantages of the act were in

the contemplation of the parties executing the deed, and that they were expressly released or waived in the mode pointed out in the statute."

It only remains for me to say that, in my opinion, the mortgage executed by the defendants in this case, constitutes no incumbrance upon their homestead, and that their homestead can not be legally subjected to a judicial sale under it; and the judgment below should be reversed.