BROWN, J., not sitting.
The action was brought to recover possession of a tract of land on Welch's Creek containing sixty acres. Plaintiff claimed the land by collateral descent from Martha A. Pettiford, who he alleged was his sister, which allegation the defendants denied, so that the sole question *Page 139 
was whether the relation of brother and sister existed between the plaintiff and Martha A. Pettiford. In order to show that Martha was not the sister of the plaintiff, the defendants asked Henry Pettiford, one of their witnesses: "What relation, by general reputation in the community, was there between Joe Ashe and Martha A. Pettiford?" The plaintiff entered an objection to the question, which was overruled by the court, and plaintiff excepted and now assigns the ruling as error. The witness answered that they were no kin, nor did they have the same father or mother, Martha's father being a man by the name of Yates, and her mother was Mary Yates, while Joe Ashe's mother was named Sylvania. The testimony of the witnesses in this connection tended to prove that Joe Ashe, the plaintiff, and Martha A. Pettiford were not brother and sister or so related as to make the plaintiff the heir of Martha, and as such entitled by descent to the land which belonged to her.
There was other testimony of the reputation in the Pettiford family as to the relation between Joe Ashe and Martha Pettiford and as to other matters bearing upon the question, but we need not consider it.
There was verdict and judgment for defendant, and plaintiff appealed.
We are of the opinion that error was committed in overruling the objection to testimony (133) of the witness Henry Pettiford as to the general reputation of the pedigree or genealogy of Joe and Martha, as this must be shown be reputation in the family of the parties concerned or by declaration of deceased members of such family, and not by general reputation in the community. The error was substantial and prejudicial.
"It was held in Kaywood v. Barnett, 20 N.C. 88, that in order to warrant the admission of declarations relating to pedigree, it is essential, first, that the parties who made the declarations be proved to be dead; secondly, that the declarants were likely to know the facts. The tradition must, therefore, be derived from persons so connected with the family that it is natural and likely, from their domestic habits and connections, that they are speaking the truth, and that they could not be mistaken," citing 2 Starkie on Ev., 604, 605.
A question exactly like the one now being considered was asked in Erwinv. Bailey, 123 N.C. 628, 634. To make the analogy between the two perfectly clear we quote literally from the opinion of the Court in *Page 140 
that case: "The defendants proposed to prove that there was a general reputation that plaintiff was not the child of Caesar. This evidence was objected to and ruled out, and defendants excepted. We do not think there was any error in the court's sustaining plaintiff's objection and in overruling the exceptions of defendants to this evidence. The case ofWoodward v. Blue, 107 N.C. 407, comes nearer sustaining defendant's exceptions than any case called to our attention; and that case does not do so, as we think."
This kind of proof is a well-known exception to the general rule excluding hearsay evidence, and it rests in part on the supposed necessity of receiving such evidence to avoid a failure of justice, and in part on the ground that individuals are generally supposed to know and to be interested in those facts of family history about which they converse, and that they are generally under little temptation to state untruths in respect to such matters which might be readily exposed. 2 Jones on Evidence (Ed. of 1913 by Horwitz), sec. 312, pp. 704, and 705.
Lord Chancellor Eldon once said, in part, that declarations in the family, description in wills, descriptions upon monuments, descriptions in Bibles and registry books are all admitted upon the principle that they are the natural effusions of a party who must know the truth and who speaks upon an occasion when his mind stands in an even position, without any temptation to exceed or fall short of the truth. In other words, the law resorts to hearsay evidence in cases of pedigree upon the ground of the interest in the declarations of the person from whom the descent is made out and their consequent interest in knowing the connections of the family. The rule of admission is therefore restricted (134) to the declarations of deceased persons who were related by blood or marriage to the person, and therefore interested in the succession in question.
From necessity, in cases of pedigree, hearsay evidence is admissible. But this rule is limited to the members of the family, who may be supposed to have known the relationship which existed in its different branches. The declarations of these individuals, they being dead, may be given in evidence to prove pedigree; and so is tradition in the family, which is the hearsay of those who may be supposed to have known the fact, handed down from one to another, evidence. As evidence of this description must vary by the circumstances of each case, it is difficult, if not impracticable, to deduce from the books any precise and definite rule on the subject. It is not every statement or tradition in the family that can be admitted in evidence. The tradition must be from persons having such a connection with the party to whom it relates that it is natural and likely, from their domestic habits and connections, that they are speaking the truth, and that they could not be mistaken. 2 *Page 141 
Jones on Evidence, 705, 706; Whitelock v. Baker, 13 Vesey 514; Fulkerson v.Holmes, 117 U.S. 389, and 16 Cy. 1225 to 1235, where the subject is fully discussed with a great many authorities in the notes presenting and illustrating manifold features of the question.
It was stated by Justice Woods in Fulkerson v. Holmes, supra, that "The fact to be established is one of pedigree. The proof to show pedigree forms a well-settled exception to the rule which excludes hearsay evidence. This exception has been recognized on the ground of necessity, for, as in inquiries respecting relationship or descent, facts must often be proved which occurred many years before the trial, and were known to but few persons, it is obvious that the strict enforcement in such cases of the rules against hearsay evidence would frequently occasion a failure of justice. Taylor Evidence, sec. 635.
"Traditional evidence is, therefore, admissible. Jackson v. Willson, 9 Johns 92; Jackson v. Browner, 18 Johns 37; Jackson v. King, 5 Cowen 237;Davis v. Wood, 1 Wheat. 6.
The rule is that declarations of deceased persons who were de jure
related by blood or marriage to the family in question may be given in evidence in matters of pedigree.Jewell v. Jewell, 1 How. 219; Blackburn v.Crawford, 3 Wall 175; Johnson v. Lawton, 2 Bing. 86; Vowels v. Young, 13 Ves. 147; Monkton v. Attorney-General, 2 Russ. Myl. 159; White v.Strother, 11 Ala. 720.
"A qualification of the rule is that before a declaration can be admitted in evidence the relationship of the declarant with the family must be established by some proof independent of the declaration itself.Monkton v. Attorney-General, 2 Russ. Myl. 156; Attorney-Generalv. Kohler, 9 H. L. Cas. 660; Rex v. All Saints, 7 B. Cr. 789. But it is evident that but slight proof of the relationship (135) will be required, since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy."
McKelvey on Evidence (2d Ed.), 271, says that where the question of pedigree is one of some years back it is generally the case that there is no living witness who has personal knowledge of the facts, and it therefore becomes necessary, if any proof at all is to be had, to resort to what may be said to be the reputation in the family concerning the facts — that is, what has been handed down from father to son, or to other form of hearsay evidence in the family. The rule is very strict as to the degree of relationship which must exist in order to render the declaration admissible. Formerly it was thought that it should be confined to those connected by blood only with the family to which the pedigree related, but subsequently it became established that declarations of a husband or wife should be admitted, citing Shrewsbury Peerage *Page 142 case, 7 H. L. Cases, t, at 26, and Jewell's Lessee v. Jewell, 1 How. (U.S.) 219, 231 (11 L.Ed. 108).
But it has been held that these are qualifications as to the competency of a husband's declarations. Harland v. Eastman, 107 Ill. 535. See, also,Conn., etc., Ins. Co. v. Schwenk, 94 U.S. 593; Eastman v. Martin,19 N.H. 152; Carnes v. Crandall, 11 Iowa 377.
A further condition of the admissibility of declarations of this nature is that they must have been made before the beginning of the controversy in which the question of pedigree arises. A common form of expressing this condition is that the declarations must have been made ante litem motam. This does not mean, however, that it is sufficient if they have been made before the commencement of the actual suit. As a matter of fact, they must have been made before the existence of the controversy which has given rise to the suit in order to be admissible. This is a rule of fairness, and is a necessary precaution against unreliable and prejudiced statements made as the result of sympathy or passion, or other feeling, or with a view to their subsequent use in litigation. McKelvey on Evidence (2d Ed.) 280, 281;Stein v. Bowman, 13 Peters (U.S.) 209, 220 (10 L.Ed. 129); People v.Fulton Fire Ins. Co., 25 Wend. (N.Y.) 205, 209; Northrop v. Hale,76 Me. 306; Barnum v. Barnum, 42 Md. 251, 304.
It was held in Stein v. Bowman, supra, that the testimony of a witness "that he had been in Hanover, Germany, last summer, and there heard from many old persons of whom he inquired that the plaintiff was the brother of Nicholas Stone, deceased," was excluded on the ground that the declarations were not of "members of the family who may be supposed to have known the relationships which existed in its different branches." 2 McKelvey on Ev. (2d Ed.) 273, note 37; (136) Chapman v. Chapman, 2 Conn. 347.
We have thus stated, in a casual way, the reasons underlying this exception, as it is called by some authorities, to the general rule concerning hearsay. It appears from this statement that public opinion in the community to show perigree or genealogy, or the relation of one person to another, is not admissible. It would violate the fundamental theory upon which the exception is based. Judge Elliott, after stating that only one State has ever approved such evidence, assigns the reasons why it should not be admitted in this language: "The exception to the general rule of evidence, the admissibility of declarations, is confined, first, to the declarations of persons deceased, for the reason that if living they should be called as witnesses; second, it is generally confined to the declarations of relatives, because they are likely to be acquainted with the pedigree of each other; and if the exception was extended to strangers, before the testimony could be admitted, it would be *Page 143 
necessary to prove the degree of intimacy, the opportunities for knowledge, the source of the information, etc., which would render the exception uncertain and difficult to apply. But in Tennessee it was held that the declarations are not to be confined to members of the family, and even public repute in the community is admissible." Elliott on Ev., sec. 2197, p. 688.
The cases in the single State mentioned do not all refer to general reputation in the community, but only one of them, and this is not supported by the only authority cited for the statement, which was based on special facts, and the testimony offered was more than mere general repute. Even this decision was met by a very strong dissent from Judge Spencer, one of the ablest and most distinguished judges in the State where it was rendered, and is contrary to all the authorities. But however this may be, we have shown by cases already cited that this Court has distinctly rejected it as opposed to the principles which justify the exception itself. It would be unsafe and too wide a departure from the ordinary rule as to hearsay to establish pedigree by any such standard of proof.
We have designated hearsay as to pedigree an exception to the general rule as to such evidence, but Mr. Greenleaf does not so treat it, but calls it original evidence. It does not follow, he says, because the writing or words in question are those of a third person, not under oath, that therefore they are to be considered as hearsay. On the contrary, it happens in many cases that the very fact in controversy is, whether such things were written or spoken, and not whether they were true; and in other cases, such language or statements, whether written or spoken, may be the natural or inseparable concomitants of the principal fact in controversy. In such cases it is obvious that the writings or words are not within the meaning of hearsay, but are original and independent facts, admissible in proof of the issue. 1 Greenleaf on (137) Ev., sec. 100. The learned author then undertakes to enumerate a number of instances in which what may, in common parlance, be termed hearsay, is original and competent evidence. Among these he includes "evidence of general reputation, reputed ownership, public rumor, general notoriety, and the like, though composed of the speech of third persons not under oath." 1 Greenleaf Ev. 101. "To this head," he adds, "may be referred much of the evidence sometimes termed hearsay, which is admitted in cases of pedigree. . . . And general repute in the family, proved by the testimony of a member of it, has been considered as falling within the rule." Other pertinent statements as to proof of pedigree may be found in the same volume, at pp. 101, 104. *Page 144 
There are other exceptions to the testimony which raise very serious questions, but we do not deem it necessary to discuss them, as perhaps they may be avoided hereafter or presented in such a different form as to materially change even the substance of them. Besides, there is scarcely any evidence that the declarations or reputation originated ante litemmotam, and there is grave doubt whether the declarations came from those qualified to speak.
We have discussed the rule as to pedigree more fully than we would otherwise have done, for the reason that it does not seem to have received very much consideration before, and because of the great and important interests dependent upon or which may be affected by it.
There must be another trial because of the error indicated.
New trial.
Cited: Burgin v. Daugherty, 198 N.C. 814.
(138)