UNIVERSITY OF NORTH CAROLINA v. J. W. HARRISON
and others.

*Evidence—Escheat to University—Presumption of death from long Absence—Presumption of heirs.*

1. The death of one who has been absent for seven years or more is inferred where it is shown that reasonable enquiry has been made of those most likely to hear from him if he were not dead, and that in the meantime he has not been heard from.

2. There is a presumption of the law that every person dying leaves heirs, however remote; and it is incumbent upon the University claiming land by escheat to rebut this presumption by proof founded upon such enquiry.

3. The testimony of a witness for plaintiff to the effect merely that for a long time he had not heard from the supposed deceased, or that he ever married and had children, is competent to go to the jury, upon an issue as to the death and existence of heirs, but does not raise a presumption that there are no heirs, requiring the defendant to combat it.

(*University* v. *Johnson*, 1 Hay., 373, doubted).

25

EJECTMENT tried at Spring Term, 1883, of WAKE Superior Court, before *Philips, J.*

Judgment for plaintiff, appeal by defendants.

*Messrs. W. S. Mason, T. P. Devereux* and *D. G. Fowle,* for plaintiff.

*Messrs. J. H. Flemming, Battle & Mordecai* and *Pace & Holding,* for defendants.

SMITH, C. J. -The land described in the complaint and sought to be recovered was granted by the state in August, 1779, to Godfrey Hartsfield, who, four years thereafter, conveyed the same to Micajah Mickelroy, under whom the plaintiff claims by the law of escheat.

To show the death and intestacy of the last owner, without heirs, one Henry Jett, examined as a witness for the plaintiff, and who had attained the age of ninety-three years, testified that he was raised by William Polk, whose residence was in the city of Raleigh, and while in his service had seen Micajah Mickelroy, then a grown man and thirty-five or forty years old, at his master's house, and that he moved away, since which witness had never heard from him, nor had he heard that Mickelroy ever married or had children or brothers. Another witness introduced in support of the plaintiff's title, one Burke McDade, who stated he was twenty-three years old, and had resided all his life within a mile of the land and six miles from Raleigh, testified that he had heard of Mickelroy; did not know where he lived; never heard of his having heirs, nor of his setting up any claim to the land; that one Dick Smith (for whom witness was overseer for about eleven years) for fifteen or twenty years had cut timber on the land, sold some of it, and that a few acres had been cleared, by whom he did not know, when he first became acquainted with the land.

This was all the evidence adduced to show the death of Mickelroy and that he left no heirs to succeed to the inheritance, beyond the fact that none had appeared to claim it.

The defendants asked the court to charge the jury "that there was no evidence that Micajah Mickelroy died without heirs," which was refused, and, instead, these instructions were given:

1. If Mickelroy has been absent and not heard from since the witness, now ninety-three years old, was a young man, or for more than seven years, he is presumed to be dead.

2. The burden is on the plaintiff to show that Mickelroy was the owner of the identical land in controversy, and that he died without issue or collateral heirs capable of inheriting.

3. If he is dead and the jury believe that no heirs or representatives have appeared to claim the land during this long period of time, this is presumptive evidence sufficiently strong upon which to infer the fact that there are no heirs.

The last charge, numbered 3, is not specifically made the subject of exception, but as it is given as a substitute for, and in response to an instruction asked and refused, it must be considered in association and as embodying a proposition the correctness of which is open to examination on the appeal. The responsive instruction might not be obnoxious to criticism, if intended only to leave the evidence to the jury, to be weighed by them in passing upon the enquiry whether the ancestor and last owner had died without any heirs to whom the inheritance could descend, and in determining its sufficiency to warrant the inference that there were none such; but it was accompanied with the declaration that the preceding facts stated raised presumptive evidence strong enough for the jury so to find the fact, thus devolving upon the defendants the burden of disproof, with this presumption in the scale against them to be met and overcome. Thus understood, the direction was erroneous, and, even if susceptible of another meaning, calculated to mislead the jury in arriving at their verdict.

The death of a person who has removed his domicil, or has been absent from his home for seven or more years, is inferred, where he has not meanwhile been heard from by those who would be expected to hear from him, if living. The mere

absence of evidence or report of his being alive is not alone suffi-
cient to raise the presumption, but the absence of such informa-
tion or report must appear by enquiring of relations, and if there
are none, of those among whom he formerly resided, who would
be most likely to hear from him if he were not dead. *Banning*
v. *Griffin*, note *a*, 15 East, 293.

In *France* v. *Andrews*, 15 Adolph. & Ellis, 756, a witness
thirty-eight years of age stated that he "had never known of
the existence of his cousin, and was not aware of having any
other relations now alive," and PATTERSON, J., said : "The mere
lapse of time does not raise a presumption of death, unless you
go further and show that the person has been absent and not heard
of by those who would have heard from him if he had returned."
In the same case COLERIDGE., J, expressed his opinion thus:.
"My doubt is whether there was reasonable evidence of enquiry in
this case. Either the lessor of the plaintiff might have produced
some person who would naturally have heard of the *cestui que*
*vie*, if he was alive, or he might have called those who had made
search for such person, and would have found him if he had
existed." For the purpose of showing that the absent person
has not been heard from, those should be called as witnesses,
or a reasonable inquiry made among them without success should
be proved. Abb. Trial Evi., 76.

But a more serious difficulty is to be met when it becomes
necessary to show, besides the death, that the party left no heirs,
lineal or collateral, to succeed to his estate. The presumption is
not that an intestate died without, but that he left heirs to take
his estate. The rule in such case is so forcibly laid down and
explained by Senator VERPLANK, of the former court of errors
in New York, in passing upon the case of *The People* v. *Fire
Ins. Co.*, 26 Wendell, 218, that we prefer to reproduce his
remarks in place of comments of our own.

"What then," he asks, "is the evidence absolutely necessary
to raise a presumption, or mere naked probability of the defect.
of heirs for the consideration of the jury, in the case of a claim

of escheated lands?" Then after a reference to a statute which directs that a title to real property by escheat shall be established by an action of ejectment, he proceeds:

" Now the great principle of the action of ejectment, as it is expressed by KENYON and ELLENBOROUGH, and adopted in all the text writers, English and American, is, that the party claiming must prevail by the strength of his own title, not by the weakness of that of his adversary. What degree of evidence is necessary then to make out any presumption of probability whatever, sufficient in the absence of opposing testimony to show the state's title by reason of defect of heirs, or to furnish any ground for a verdict in favor of the people? The ordinary rational, as well as legal presumption as to every person is, that he *must have some relations and consequently some heirs,* however remote, and whether known to him or not. From the natural laws of human descent and relationship, this must be so; and the necessary presumption must be that every citizen dying leaves some one entitled to claim as his heir, however remote, unless one or the other of the only two exceptions known to our law (alienage and illegitimacy) should intervene.    *    *    * Proof of the fact of there being no known heirs of the deceased may well raise a presumption that for some unknown reason the inheritable blood had failed, provided such proof be direct and positive, founded upon enquiry, advertisements, personal family knowledge, or the actual declaration of the person last seized, or of those from whom his title descended. But can he with propriety go further than this and permit the natural and general presumption *of kindred to be combated at all by proof of* mere hearsay reputation? " Abbott Trial Evi., 75, 76.

This statement of the law seems to us to be correct, and the requirement that enquiries be made of those most likely to know whether there are any heirs capable of succeeding to the inheritance, before any presumption can arise that there are none, is eminently reasonable and proper.

Testing the facts given in evidence by this rule, they fall

short of its requirements. One witness who had heard of, but never seen the deceased, yet lived in the same neighborhood, does not appear to have made any enquiry to ascertain if he has any relations living from whom information might have been obtained, and gives testimony merely negative. Another witness residing several miles distant from that locality had seen the deceased at his master's table, and knew of his removal, many years ago. His testimony is that he had never heard of him since, nor whether he had ever married or had children or brothers, and this is equally negative.

The witness is not asked whether he has applied to the proper sources of information, or indeed made any enquiry even of persons who reside near the former residence of the deceased, nor whether there is any of his blood there still remaining.

Besides this, there is the only additional fact that no claimants of the land under the ancestor have made their appearance.

Now while this negative evidence is competent and perhaps sufficient to warrant the finding of the jury, it does not raise such a presumption that there are no persons capable of succeeding to the inheritance, requiring the defendants to combat it; but it was for the jury to consider and estimate its proper force in arriving at a verdict upon the issue before them. Indeed the presumption is the other way, and it rested upon the plaintiff to offer proof in overcoming it.

It is true, language almost identical with that contained in the instruction is used in the opinion in *University* v. *Johnson*, 1 Hay., 373, but it is an unsafe guide to follow, as a general rule, in determining upon an escheat. It was said in regard to a grantee, who, within a year or two after the issue of the grant in 1763, left the country intending to go to Ireland, and of whom nothing had been heard for more than thirty years, during which had occurred events which rendered the people of Ireland aliens and incapable of transmitting lands, owned by them in this state, by descent. Const. 1776, §40.

Such evidence would be much more cogent, under such cir-

cumstances, where it may be supposed those of the blood of the ancestor were residents of the same country with him, and thus excluded, by the disability of alienage, from succeeding to his real estate. The presumption would then be confined to heirs living and citizens of the government where the land was.

But independently of these peculiar incidents to that case, we cannot concur in a ruling so much at variance with the rulings, since made and the sound reasoning upon which they rest for support. We think some reasonable effort should be made to ascertain whether there are survivors of the blood of the ancestor, before assuming that there were none such.

For the error pointed out, and without passing upon others assigned, the defendants are entitled to a new trial, and it is so adjudged. Let this be certified.

Error.                                        *Venire de novo.*