## SUN PIPE LINE CO. et al. v. WOOD.
### No. 3420.

Court of Civil Appeals of Texas. Beaumont.

May 26, 1939.

Chas. F. Heidrick, Duff & Cecil, and Joiner Cartwright, all of Beaumont, Hollis Kinard and V. H. Stark, both of Orange, and W. K. Hall, Nelson Jones, Ike Handy, Albert J. DeLange, Joe S. Brown, H. H. Jennings, and B. C. Clark, all of Houston, for appellants.

J. T. Adams and DeWitt C. Bennett, both of Orange, and Gilbert Adams and Howth, Adams & Hart, all of Beaumont, for appellee.

COMBS, Justice.

Appellee, L. J. Wood, as plaintiff filed this suit on September 8, 1937, in the district court of Orange County, Texas, against all ·of the appellants except Lee Hager, Ernest Cockrell, Mrs. Annie Higgins and her husband, Patillo Higgins, who intervened as parties defendant, and also against several other parties who were later dismissed and are not involved here. He alleged that he was the owner of that fractional royalty interest in a 211-acre tract of land in the William Dyson survey, Orange County, set apart to Nancy Ashworth, sometimes known as Nancy Stewart, by judgment of the district court of Orange County, Texas, of date February 3, 1922, in cause No. 4391, William Winfree, et al. v. The Unknown Heirs of William Ashworth, et al., and also that he was the owner of all land in the William Dyson survey set apart to Nancy Ashworth in said judgment. The portion of the judgment referred to reads as follows: "It is ordered that there shall be set aside as the interest of Nancy Ashworth, who married Jack Stewart, the following amount, 00595238 of the total production of all or any tract. This interest, in any such tract, shall be purchased by the lessee or operator of any such tract, or by the pipe line company running ·the oil, as hereinabove provided, and the proceeds shall be held in escrow by such lessee or operator, or pipe line company, until the ownership thereof may be finally determined between all parties claiming the same through and under Nancy Ashworth Stewart by agreement or by final decree of a court of competent jurisdiction."

He alleged that since the rendition of said judgment the defendants had received, and now hold for plaintiff by virtue of said judgment, oil of the value of $250,-000. He prayed for an accounting, and in the alternative, in case the defendants failed and refused to account, for appointment of a receiver, and further prayed that "he have judgment against said defendants, jointly and severally, for the sum of $250,000.00, for costs of suit and for general and special relief."

Plaintiff's suit is grounded upon a deed and assignment from a negro, W. F., or Wes, Ben, who it is contended is the illegitimate son of the Nancy Ashworth, a white woman, referred to in the judgment, and who married Jack Stewart. The plaintiff's theory, as disclosed by his evidence, was that W. F. or Wes Ben was born to Nancy Ashworth in 1860, in Newton County; that his father was a negro slave, Reuben Ben, owned by Mr. W. R. Fuller; that Nancy Ashworth left Newton County, when Wes was a small boy, with Jack Stewart. Wes Ben testified by deposition that he never saw his mother any more until about 1914, when she came to his home in Newton County, and that he secreted her there for several months and she later went to the home of Mr. and Mrs. Jolly where she lived until she died in the early part of 1916. Plaintiff also offered the testimony, by deposition, of several other witnesses tending to corroborate Wes Ben's testimony, including the testimony of Mr. and Mrs. Jolly, to the effect that Nancy Ashworth Stewart lived with them in 1915 and died there in the early part of 1916. And one Josh Griner testified, also by deposition, that he hauled Nancy Ashworth Stewart's remains to Kyle Cemetery, near Roganville, in Jasper County, where she was buried in the spring of 1916.

The defendants offered evidence which strongly, if not overwhelmingly, disproved the plaintiff's case. They offered several witnesses who knew Nancy Ashworth Stewart and Jack Stewart, who testified that Nancy Ashworth lived with her parents, William and Delaide Ashworth, in

Orange County until she married Andrew Jackson Stewart and came to Jefferson County during the Civil War days; that they first lived at Rosedale, in Jefferson County, where her mother, Delaide Ashworth, was buried. She and Jack Stewart later lived on McFaddin's ranch in Jefferson County until the death of Jack Stewart; that sometime after his death Nancy Ashworth Stewart moved to Beaumont and removed the remains of Jack Stewart to Magnolia Cemetery in this city, and continued to live here until shortly after the Spindletop oil field came in, when she died about 1901 and was buried beside her husband, Jack Stewart, in Magnolia Cemetery. Defendants also offered several deeds made by Andrew Jackson Stewart and wife, Nancy Stewart, conveying lands not involved here, which deeds were made at different times along in the late 1870s until about 1885, in some of which deeds recitals were made that she was the daughter of William and Delaide Ashworth, and all of which deeds show that Jack and Nancy Stewart were residents of Jefferson County at the time the deeds were made. Testimony was also offered to show that Nancy Ashworth Stewart never had any children, and we think the testimony of the witnesses overwhelmingly established that if plaintiff's grantor, W. F. Ben, was the son of a Nancy Ashworth, she was not the Nancy Ashworth, daughter of William and Delaide Ashworth, who lived a respectable life in Jefferson County from Civil War days, continuously until her death in 1901. The defendants further offered the evidence of numerous witnesses, including Nancy Sells, sister of W. F. Ben, and Mr. George Fuller, son of the W. R. Fuller who owned Reuben Ben, father of W. F. or Wes Ben, which witnesses testified that Wes Ben was the son of Reuben Ben and a negro slave woman named Mint or Minta, belonging to Mr. W. R. Fuller. Incidentally, Mr. George Fuller testified that as a child he was actually present in the room when Wes Ben was born to Mint or Minta, that he had known him all his life and knew him to be Mint or Minta's son. Certain impeaching testimony was offered by the defendants but excluded on objection of the plaintiff. By way of impeachment, the defendants offered an affidavit made by Wes Ben subsequent to the time he gave the deposition which was used in this case, in which he stated that the testimony given by him in the deposition was false, that he was in fact the son of Mint or Minta, and that he never heard of a Nancy Ashworth, either white or black, until recently. Oral testimony of L. H. Howell was also offered for impeachment, to the effect that in conversation with Josh Griner, subsequent to the time he gave the deposition which was used in this case, Mr. Griner contradicted the statements made in his deposition to the effect that Nancy Ashworth was buried in Kyle Cemetery.

The trial court overruled motion for an instructed verdict. The jury in response to special issues found that the Nancy Ashworth Stewart mentioned in the Winfree judgment was the mother of plaintiff's grantor, W. F. Ben, and on the jury's verdict judgment was entered in favor of the plaintiff and against the defendants for the land sued for and a money judgment for approximately $68,000, from which judgment this appeal was prosecuted.

## Opinion

We will first dispose of two preliminary matters. Appellee has moved to dismiss the appeal of Lee Hager, Ernest Cockrell, Mrs. Annie Higgins and Patillo Higgins on the ground that being intervenors in the suit they were not entitled to appeal by joining in the appeal and supersedeas bond filed by the defendants. The contention is without merit. True, these parties came into the suit voluntarily by way of intervention, but they joined the common cause with the other defendants against the plaintiff's suit claiming their respective interests; cross actions against them by the defendants were dismissed and to all intents and purposes they were as truly parties defendant as though they had been sued by the plaintiff in the first instance. Hancock v. Metz, 15 Tex. 205.

There are also motions to strike the briefs of all the appellants and to dismiss the appeal because the appeal and supersedeas bond refers only to the money judgment and not to that portion of the judgment which decrees title to the land. There is no merit in the contention. The portion of the bond objected to is merely descriptive and is intended to identify the judgment appealed from. The number of the suit, the style of the case, the date of the judgment and the parties are all set forth. The bond as a whole fully identifies the judgment appealed from and the mere omission to

state that the judgment also decreed title to the land does not invalidate the bond. Pillow v. McLean, 126 Tex. 349, 88 S.W. 2d 702.

■ Coming now to the merits, we will state, without any extensive review of the testimony, that the jury's findings to the effect that plaintiff's grantor, W. F. Ben, is the son of the Nancy Ashworth Stewart mentioned in the Winfree judgment, is without sufficient credible evidence to support the findings. Plaintiff's evidence in support of his contentions presents a state of facts so improbable and the evidence as a whole, which we have but briefly reviewed above, so overwhelmingly refutes the plaintiff's theory that we would not allow the judgment to stand if no other grounds of reversal appeared in the record. We could not reach any other reasonable conclusion, especially in view of the doubt cast upon the testimony of the plaintiff's chief witness by the impeaching testimony which was offered. However, since considerable evidence was excluded it may be that the case was not fully developed and for that reason we do not render the case but will remand it for a new trial. And since the case is to be remanded it becomes necessary to pass upon certain other assignments urged by appellant.

■ On the trial of the case, the defendants offered in evidence a deed from Mrs. Nancy Stewart, wife of Andrew Jackson Stewart, deceased, to Gillie Higgins, dated December 24, 1900, conveying all of her interest in the William Dyson League "which is devised by inheritance from my father and mother William Ashworth and wife Delied Ashworth." The deed was duly acknowledged before W. M. Crook, a notary public of Jefferson County, and was recorded in the deed records of Orange County on January 2, 1901. The trial court excluded the deed on the theory that defendants had severally plead their title without pleading the deed; that the Winfree judgment was the common source and defendants could not, therefore, introduce the deed but were confined to proof of the title plead.

The deed should have been admitted. In the first place, plaintiff's suit was not a suit in trespass to try title. The pleading was not so endorsed, and while the omission of the statutory endorsement is not of itself determinative of the question of the nature of the suit, the pleading,

as a whole as we construe it, shows on its face to be a suit primarily for money judgment for oil converted. The prayer does not pray in specific terms for any judgment for the land, but only for $250,-000, and "general and special relief."

■ Furthermore, even if plaintiff's suit be in trespass to try title the Winfree judgment was not common source. The judgment did not purport to create the interest sued for but merely set aside "as the interest of Nancy Ashworth" the interest involved. So, Nancy Ashworth and not the judgment was the common source, a proposition perfectly apparent from the fact that plaintiff's whole case was an attempt to deraign title out of Nancy Ashworth by showing that his grantor was her son and only heir.

■ The testimony of L. H. Howell, offered to impeach the witness Josh Griner, and the affidavit of W. F. Ben, also offered for the purpose of impeachment, should have been admitted. The former contradictory statements of the witnesses were admissible for the limited purpose of impeachment as it clearly affected their credibility. 45 Tex.Jur. 148; Gilmour v. Heinze, 85 Tex. 76, 19 S.W. 1075. The rule includes and makes admissible an affidavit made by a witness which contradicts his testimony. Jordan v. Johnson, Tex.Civ.App., 155 S.W. 1194.

■ Defendants also offered several deeds made by Nancy and Jack Stewart, in Jefferson County, from the late 1870s until about 1885, which deeds contained recitals of heirship, which deeds were excluded on the objection of the plaintiff. The deeds were admissible on the question of heirship as ancient instruments. Vernon's Ann.Civ.St. art. 3726a. They were also admissible as a corroborating circumstance tending to corroborate the testimony of defendants' witnesses to the effect that the Stewarts were living in Jefferson County at the time in question.

■ We do not pass upon appellants' contention that the Winfree judgment divested Nancy Ashworth Stewart, and her heirs, of any title they may have had and vested it in Raymond Dickson and J. V. Fleming, who were parties to that suit, each claiming the interest under adverse claims of title. Appellants contend that said two parties are the ones, and the only ones, referred to in the judgment decreeing escrow of the funds, "Until the

ownership thereof may be finally determined between all parties claiming the same through and under Nancy Ashworth Stewart." Much of the record evidence bearing upon this question was excluded. We cannot say that the judgment itself is entirely clear on the point. For the purpose of interpreting the judgment the entire judgment roll of the Winfree suit, or so much as may be pertinent, is admissible, and should be considered. It is permissible also for any party to introduce muniments of title, otherwise admissible, to show that he has acquired the Dickson and Fleming interests, or any other interest here involved, which may have been established by the judgment.

For the errors discussed, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.