HENRY MURPHY, OLIVER MURPHY, McKINELY MURPHY, VINEY LANGSTON, NOAH ATKINSON AND THOMAS ATKINSON, PETITIONERS, v. W. M. SMITH AND WIFE, NOVELLA SMITH, RESPONDENTS.

(Filed 30 April, 1952.)

1. **Reference §§ 9, 12—**

Where the referee fails to find a material fact, the remedy is by motion to recommit and not by exception to the failure of the referee to find the fact.

2. **Appeal and Error § 40d—**

Findings of fact by the referee approved by the trial judge are conclusive on appeal if supported by any evidence.

3. **Death § 1—**

Testimony to the effect that a missing person was last heard from some time during a particular year supports a finding that such person was not dead in February of the seventh year thereafter, there being no evidence that the full seven years had elapsed as of that date.

4. **Reference § 14a—**

A party to a compulsory reference waives his right to trial by jury, notwithstanding his objection to the order of reference and exception to the referee's finding of fact, when the issues tendered by him relate only to evidentiary matters and not to those issues arising upon the pleadings.

5. **Partition § 1a—**

Tenancy in common in land is the basis for a petition for partition. G.S. 46-1, G.S. 46-3.

**6. Partition § 5a—**

A plea of sole seizin in a proceeding for partition converts the proceeding, in legal effect, into an action in ejectment, with the burden upon petitioners to prove their title.   G.S. 1-399.

**7. Death § 1—**

The rebuttable presumption of death from seven years absence does not embrace any additional presumption that the missing person died without lineal descendants.

**8. Partition § 5d: Ejectment § 17—**

Where, upon the plea of sole seizin in a proceeding for partition, petitioners' title is made to depend upon the death of a missing person without surviving heirs, and petitioners' only evidence in reference to this matter raises at most only a presumption of the death of such missing person, *held* petitioners have failed to make good their allegation of tenancy in common and nonsuit was properly entered.

**9. Ejectment § 11—**

Where plaintiffs claim as collateral heirs of a particular person and fail to show that the only child of such person died without surviving heirs, they fail to connect their claim of title with such person, and may not contend that such person was a common source of title.

APPEAL by petitioners from *Bone, J.,* at November Term, 1951, of CRAVEN.

Special proceeding for partition of land, transferred to the civil issue docket of Superior Court for trial upon issues joined. Summons issued 24 February, 1939, for W. M. Smith and was served on him 28 February, 1939.

Petitioners allege in their petition: 1. That they are tenants in common, and are seized in fee, and are in possession of two specifically described tracts of land situate in Craven County, North Carolina, (1) containing 83 acres, more or less, except such part thereof as was conveyed by Richard Jenkins and Jane, his wife, to John and Oliver Simpson, by deed dated 23 December, 1926, and registered in the office of the Register of Deeds of said county in Book 274, page 282; and (2) containing 75 acres, more or less, except such part thereof as was conveyed by Richard Jenkins and Jane, his wife, to Lula Nobles, by deed dated 22 January, 1927, and registered in said office in Book 278, page 12.

2. That the interests of the petitioners in said lands are as follows: Henry Murphy, Oliver Murphy, and McKinley Murphy, each an undivided one-ninth part of the whole, and Viney Langston, Noah Atkinson and Thomas Atkinson, each an undivided one-fifteenth part of the whole; that defendant W. M. Smith has an undivided interest in such part of said lands as is described as Lots Nos. 3 and 4, as shown on a plat of said lands made by F. A. Fulcher, Surveyor, 20 September, 1935, specifically

described as set forth, containing in the two lots 21.7 acres, more or less, and that petitioners are advised, informed and believe that Martha Atkinson and Lula Atkinson now in the State Hospital at Goldsboro also own an undivided interest in said lands.

3. That petitioners desire to hold their shares in said land in severalty.

Respondent, answering, denies in material aspect all matters alleged in the petition, except he admits that he has an interest in part of the land described therein, to wit: Lots 3 and 4, containing 21.7 acres, etc., by virtue of a deed from J. B. Hellen and wife Mamie Hellen, to W. M. Smith and Novella Smith, his wife, executed 15 November, 1938, and recorded in Book 338, page 310, Records of Craven County, and that he, the defendant, and his wife thereby became the sole owners of said lots 3 and 4.

And as further answer to the petition the respondent avers: 1, 2 and 3: That on 20 September, 1935, F. A. Fulcher, Surveyor, surveyed said lands for the purpose of dividing the property of Jane Jenkins, deceased, among her heirs, as a result of which the two tracts of land were divided into seven tracts; that lots 1 in each tract were allotted to Noah Atkinson; lots 2 in each tract to Viney Atkinson; and lots 3 and 4 in each tract to Arie Frizzelle and Martha Dunn, and on 7 October, 1935, deeds of partition were executed by and between these parties and duly recorded in the office of the Register of Deeds of Craven County.

4. That subsequent to said partition John Frizzelle and Arie Frizzelle, his wife, conveyed to J. B. Hellen one-half undivided interest in said lots numbers 3 and 4, specifically described, containing in the two lots 21.7 acres, more or less; and on 2 February, 1938, Rev. J. F. Dunn and Julia M. Dunn, his wife, and Thomas Dunn and Hattie Dunn, his wife, as devisees of Martha Dunn, conveyed to J. B. Hellen one-half undivided interest in said lots 3 and 4.

5. That on 4 April, 1938, J. B. Hellen instituted an action of ejectment against Viney Langston, James Galloway, Joe Bullock and Tom Atkinson, and a consent judgment was rendered therein on 15 August, 1938, by the Clerk of Superior Court,—declaring J. B. Hellen to be the owner and entitled to possession of said lots 3 and 4.

6. That on 15 November, 1938, J. B. Hellen and wife conveyed by deed these lots to W. M. Smith and Novella Smith.

7. That petitioners Viney Langston and Noah Atkinson, by participating in the partition of the property of Jane Jenkins, and by taking their proportionate part, and thereby benefitting thereunder, are now estopped to set up any claim to an undivided interest in the whole tract.

8. That petitioners Viney Langston and Thomas Atkinson are estopped to attack the title or set up any claim to the property of W. M. Smith, by reason of the consent judgment above referred to, etc.

Wherefore, defendant W. M. Smith prays that as to him the action be dismissed, etc.

At the May Term, 1940, the presiding judge entered an order of compulsory reference to which plaintiffs and defendants excepted. On hearing before referee, on 30 December, 1940, petitioners offered records of deeds tending to show that the two tracts of land described in the petition were conveyed to Jane Jenkins. And petitioners offered testimony tending to show that Jane Jenkins and her husband, Richard Jenkins, had one child, a son, John Jenkins; that Jane died, and then Richard died.

And petitioners offered further testimony upon which they contend that John Jenkins, son of Jane and Richard, left Craven County, and had been gone for sufficient length of time and under circumstances for presumption of death to arise.

And petitioners offered further testimony tending to show collateral kinsfolk of Jane Jenkins who, including petitioners, would inherit her real estate in the event her son John were presumed to be dead.

And on the hearing "Both petitioners and respondents admit that if John Jenkins is alive he owns the property to the exclusion of both petitioners and respondents."

When petitioners rested their case, respondents moved for judgment as of nonsuit, particularly as to tracts 3 and 4, that is, the 21.7 acres claimed by respondents.

The hearing before the referee was resumed on 4 January, 1950. In the meantime, on 29 June, 1949, the death of Oliver Murphy, one of the petitioners, was suggested, and his widow and his children, all minors, and their mother, as their duly appointed next friend, were made parties to the proceeding. And Mrs. Novella Smith was made a party defendant.

Respondents offered evidence, and petitioners offered further evidence.

At the close of all the evidence respondents renewed the motion for nonsuit.

The referee, reporting to May Civil Term, 1951, after reciting record data substantially as hereinabove set forth, made findings of fact, the first fifteen of which relate to title records, and tending to show basically that Jane Jenkins at her death was seized of the lands in question. Then follows these findings of fact pertinent to question presented on this appeal:

"16. The petitioners claim as heirs at law of Jane Jenkins, the wife of Richard Jenkins and the mother of John Jenkins, and claim that said Jane Jenkins died intestate. Plaintiffs also claim through Abraham and Dinah Murphy, the parents of Jane Jenkins. Jane Murphy married Richard Jenkins, and they had one child, John Jenkins. Jane and Richard are both dead, and John Jenkins is still alive on February 24th, 1939. (See testimony of Viney Langston.) John Jenkins was last heard from in 1932."

"18. . . . Jane Jenkins died prior to her husband, and Richard Jenkins afterward married Charity Jones, and at the time of her death Jane had a son living, John Jenkins, who was living in 1932. Richard Jenkins predeceased his son.

"19. John Jenkins got into some trouble and left this section but continued to write as late as 1932. The month and day in 1932 was not given by the witnesses, but he was last heard from in 1932.

"20. This action was instituted by issuance of summons on the 24th day of February, 1939. There is no evidence as to John Jenkins' having been married and no evidence as to whether or not he left descendants."

And the referee, upon these findings of fact, submitted his conclusions of law in pertinent part as follows:

"1. That the burden of proof as to the presumption of death of John Jenkins, the son of Jane Jenkins, deceased, and Richard Jenkins, deceased, is on the petitioners, plaintiffs, and in the opinion of the Referee they have failed to carry the burden, and he so finds. Plaintiff's testimony, Viney Langston, Page 3: 'Aunt Jane married Richard Jenkins. She had one child, John Jenkins. Jane and Richard are dead. John was living the last time I heard. I knew John. He left home. Been a long time.' There is no presumption raised on the evidence that John Jenkins died without lineal descendants, and there is no competent evidence to establish this fact.

"2. The plaintiffs should be nonsuited. . . .

"5. And upon the foregoing findings of fact and conclusions of law, the Referee reports to the court his decision as follows:

"That the plaintiffs be nonsuited, that the action be dismissed, and that the defendants have and recover of the plaintiffs the cost of the action to be taxed by the Clerk."

The petitioners filed exceptions to the report of the Referee, submitted issues, and demanded a jury trial,—all substantially as follows: The first seven exceptions, respectively, are directed to "the failure of the referee to find as a fact" evidentiary matters, the first six as to genealogy in relation to Jane Jenkins and her collateral kinsfolk, and the seventh to "failure . . . to find . . . in what year Richard Jenkins died."

And the eighth exception is "for that the referee found as a fact in Finding of Fact 16 that John Jenkins was still alive on February 24, 1939, and as basis for such referred to testimony of Viney Langston . . ., when as a matter of fact there is no evidence on either of said pages to such effect. 'Record of evidence' (pages cited) . . . shows that Richard Jenkins, father of John Jenkins, died in 1931, and all the evidence in the record shows that the last person who heard from John Jenkins was his father, Richard Jenkins, and upon such the referee should have found at least that John Jenkins was presumed to be dead."

Then follows exceptions to conclusions of law: The first (9) is to the failure of the referee to conclude as a matter of law the relationship of Viney Langston, and others named, to Jane Jenkins and John Jenkins.

"10. For that the referee erred in concluding as a matter of law that the petition of the plaintiffs be nonsuited on account of the failure of the plaintiffs and petitioners to establish that John Jenkins died without lineal descendants, or for that matter was dead at all,—and petitioners say that this conclusion of law was in error for that": (Then follows matters of argument).

The next two exceptions, Nos. 11 and 12, pertain to matters of law not pertinent to point on which decision rests.

Then this follows: "Upon the exceptions, the findings of fact, and conclusions of law of the referee as filed in this cause, the petitioners say that the following issues arise and accordingly herewith submit such issues as seems to them to be appropriate and necessary, and on each of such issues demand a jury trial and request that they be submitted to the jury in term for answer as follows." Then eight issues are set out,—all relating to evidentiary matters, and none to issues raised by the pleadings.

When the cause came on for hearing at November Term, 1951, the presiding judge overruled the exceptions filed to the report of the referee, approved the findings of fact and concluded thereon as a matter of law that petitioners are not entitled to a partition of the lands described in the petition; and, in accordance therewith, ordered, adjudged and decreed that the proceeding be dismissed, and that petitioners are taxed with the cost.

And the record shows that "petitioners excepted to the overruling of each of said exceptions, and these exceptions constitute petitioners' exceptions," Nos. 1 to 12, both inclusive.

And petitioners excepted to the court's refusal to submit each of the issues tendered or any issue, and these exceptions constitute petitioners' exceptions, 13 to 20, both inclusive.

Petitioners excepted to the judgment signed, and this constitutes petitioners' exception 21.

Petitioners appeal to Supreme Court and assign error.

*Sam O. Worthington and R. A. Nunn for petitioners, appellants.*
*H. P. Whitehurst, W. B. R. Guion, and G. B. Riddle, Jr., for respondents, appellees.*

WINBORNE, J. After careful consideration of the several assignments of error presented by appellants, the petitioners, on this appeal, error is not made to appear.

The first seven assignments of error are based upon exceptions to the failure of the referee to find certain facts. Such failure is not ground for

exception. Hence they are untenable. The failure to find certain facts might be ground for a motion to recommit the report with instructions to find them, if it appeared that they were material. *Tilley v. Bivens,* 110 N.C. 343, 14 S.E. 920; *Blalock v. Mfg. Co.,* 110 N.C. 99, 14 S.E. 501; *Scroggs v. Stevenson,* 100 N.C. 354, 6 S.E. 111; *Williams v. Whiting,* 92 N.C. 683.

The assignment of error, based upon exception No. 8, to finding of fact number 16 made by the referee is likewise untenable, for that:

It is a rule of procedure, long established in this State, that findings of fact made by a referee, and affirmed by the judge, are conclusive on appeal if there be evidence tending to support them. See, among other cases, *Frey v. Lumber Co.,* 144 N.C. 759, 57 S.E. 464; *Henderson v. McLain,* 146 N.C. 329, 59 S.E. 873; *Mirror Co. v. Casualty Co.,* 153 N.C. 373, 69 S.E. 261; *McGeorge v. Nicola,* 173 N.C. 707, 91 S.E. 708; *Gaither v. Hospital, ante,* 431.

Applying this rule to this finding of fact, the testimony of petitioner Viney Langston tends to support the finding. She testified, "John Jenkins was living the last time I heard of him . . . John was in Lexington, Ky. the last I heard of him in 1932." The action was brought on 24 February, 1939, and there is no evidence that seven years absence from which presumption of death would arise expired before that date.

But petitioners say they have right to a jury trial.

In this connection, the procedure which must be pursued in a compulsory reference in order to preserve the right to a trial by jury is clearly and concisely stated in *Booker v. Highlands,* 198 N.C. 282, 151 S.E. 635, in opinion by *Stacy, C. J.,* the first two requirements being pertinent to case in hand, as follows:

"1. Object to the order of reference at the time it is made . . .

"2. On the coming in of the report of the referee, if it be adverse, file exceptions in apt time to particular findings of fact made by the referee, tender appropriate issues based on the facts pointed out in the exceptions and raised by the pleadings, and demand a jury trial on each of the issues thus tendered . . ."

And "a failure to observe any one of these requirements may constitute a waiver of the party's right to have the controverted matters submitted to a jury, and authorize the judge to pass upon the exceptions without the aid of a jury." McIntosh, Sec. 525. See also *Gaither v. Hospital, ante,* 431.

In *Brown v. Clement Co.,* 217 N.C. 47, 6 S.E. 2d 842, opinion by *Barnhill, J.,* it is said, "Notwithstanding an order of reference, a determination of the issues of fact raised by the pleadings and evidence in the cause remains as the primary purpose. A jury trial does not extend to every finding of fact made by a referee and excepted to by the parties, but only to

issues of fact raised by the pleadings and passed upon by the referee. McIntosh, Sec. 525. Questions of fact may not be substituted for issues merely because there is a controversy, as disclosed by the exceptions, as to what the facts are. McIntosh 525 (4)." See also *Simmons v. Lee,* 230 N.C. 216, 53 S.E. 2d 79.

In the light of these decisions, it appears that petitioners excepted to the order of compulsory reference, and upon the coming in of the report of the referee, adverse to them, filed exception to the 16th finding of fact made by the referee, and tendered issues,—and demanded a jury trial. But the issues tendered are not those arising on the pleadings. Hence there is a waiver of the petitioners' right to have the controverted matters submitted to a jury. Therefore the judge was authorized to pass upon the exception without the aid of a jury, and the finding of fact, supported by evidence, and approved by the judge is binding on this Court.

The assignments of error based upon exception to the conclusion of law that motion for nonsuit should be.allowed, and upon the exception to the judgment of nonsuit are not tenable for that:

Tenancy in common in land is necessary basis for maintenance of special proceeding for partition by petition to the Superior Court. G.S. 46-1, G.S. 46-3, formerly C.S. 3213, 3215, *Gregory v. Pinnix,* 158 N.C. 147, 73 S.E. 814. And when tenancy in common is denied, and there is a plea of sole seizin, the proceeding in legal effect is converted into an action in ejectment and should be transferred to the civil issue docket for trial at term on issue of title,—the burden being upon the petitioners to prove their title as in ejectment. G.S. 1-399, formerly C.S. 758. *Gibbs v. Higgins,* 215 N.C. 201, 1 S.E. 2d 554; *Keen v. Parker,* 217 N.C. 378, 8 S.E. 2d 209; *Bailey v. Hayman,* 222 N.C. 58, 22 S.E. 2d 6; *Jernigan v. Jernigan,* 226 N.C. 204, 37 S.E. 2d 493.

And in an action to recover land the general rule is that plaintiff must rely upon the strength of his own title, and not upon the weakness of that of defendant. *Love v. Gates,* 20 N.C. 498; *Newlin v. Osborne,* 47 N.C. 163; *Spivey v. Jones,* 82 N.C. 179; *Keen v. Parker, supra; Stewart v. Cary,* 220 N.C. 214, 17 S.E. 2d 29.

In the present action petitioners base their claim to tenancy in common upon contention that Jane Jenkins died intestate and seized of the land in question, that John Jenkins was her only child, that he is dead without lineal descendants, and that they, the petitioners, are his collateral heirs. And it was admitted on the hearing before the referee that if John Jenkins is alive he owns the lands to the exclusion of both petitioners and respondents.

In this connection, there is a rule of evidence that "the absence of a person from his domicile, without being heard from by those who would

be expected to hear from him, if living, raises a presumption of his death, that is, that he is dead at the end of seven years," *Beard v. Sovereign Lodge,* 184 N.C. 154, 113 S.E. 661; *University v. Harrison,* 90 N.C. 385; *Steele v. Ins. Co.,* 196 N.C. 408, 145 S.E. 787; *Deal v. Trust Co.,* 218 N.C. 483, 11 S.E. 2d 464; *Carter v. Lilley,* 227 N.C. 435, 42 S.E. 2d 610; *Trust Co. v. Deal,* 227 N.C. 691, 44 S.E. 2d 73.

Such presumption, arising from seven years absence under the rule, is a presumption of fact which may be rebutted. *Chamblee v. Bank,* 211 N.C. 48, 188 S.E. 632, and cases cited. See also *Deal v. Trust Co., supra; Trust Co. v. Deal, supra.*

However, the proof of facts on which such presumption arises raises no presumption that the missing person died without lineal descendants. *University v. Harrison, supra; Warner v. R. R.,* 94 N.C. 250; *Deal v. Trust Co., supra; Trust Co. v. Deal, supra.*

Applying these principles to the findings of fact, supported by evidence, and approved by the judge, we hold that the conclusion that the petitioners have failed to make good their allegations of tenancy in common is correct. Hence the judgment of nonsuit was proper.

This record fails to present a case of who has the better title under a common source to which *Stewart v. Cary, supra,* cited by appellants, relates. Failing to connect their claim with Jane Jenkins, there is no common source.

Other assignments of error have been given due consideration and are found to be without merit.

The judgment below is

Affirmed.