SKIPPER *v.* YOW.

MARY S. SKIPPER AND HUSBAND N. R. SKIPPER, K. C. SIDBURY and CHARITY SIDBURY, HIS WIFE; MURRAY G. JAMES, TRUSTEE, AND WINSTON WILLIAMS AND OTHERS (THE HEIRS AT LAW OF THE LATE ELIJAH B. WILLIAMS), PETITIONERS v. E. L. YOW' AND WIFE MRS. E. L. YOW, AND CICERO YOW AND WIFE MRS. CICERO YOW, DEFENDANTS.

(Filed 15 October, 1958.)

**1. Partition § 4a—**

Petition for partition should accurately describe the specific lands sought to be partitioned and should affirmatively make it appear that all parties who claim an interest in the property are before the court.

**2. Partition § 5a—**

Where respondents in a proceeding for partition deny that petitioners own any interest in the land, the proceeding is converted into a civil action to try title.

**3. Ejectment § 10—**

Where a proceeding for a partition is converted into an action to try title by respondents' denial that petitioners own any interest in the land, petitioners cannot be nonsuited if their evidence is sufficient to warrant a jury in finding that they own some interest in the land entitling them to the present right of possession, and it is not required that they establish the exact interest claimed in their pleading.

**4. Same—**

Plaintiffs seeking to establish title by showing a common source of title and a better title from that source, must not only show that the parties trace their title to the same person, but must also show title to the same land from that source.

**5. Descent and Distribution § 1—**

Real property passes to collateral relations only in the absence of lineal descendants.

**6. Same—**

Upon proof of death there is a presumption that deceased died intestate, but there is no presumption that he died without lineal descendants.

**7. Same: Ejectment § 9: Evidence § 25½—**

A deed executed by a sister of the common source of title more than thirty years prior to its introduction in evidence, reciting that the common source of title was unmarried, that he died intestate seized of the land, and that his interest descended to his brothers and sisters, is competent under the ancient document rule to prove that the land descended to the collateral heirs of the common ancestor, it affimatively appearing that at least some who spoke through the recitals are dead and there being no suggestion that the instrument is spurious or had been altered in any respect.

**8. Ejectment § 10—**

Where plaintiffs in an action to try title introduce evidence that the land descended to the collateral heirs of the common ancestor, together with evidence of their inheritance from such collateral heirs and evidence

of defendants' title from the same source, the evidence is sufficient to be submitted to the jury on the question of inheritance and precludes nonsuit if plaintiffs' evidence is sufficient to identify the land as the land in controversy.

**9. Boundaries § 1—**

The fact that the descriptions in deeds forming the chain of title are not identical is not material if the differing language may in fact fit the same body of land, and if it is apparent from an examination of the descriptions in the several deeds that the respective grantors intended to convey the identical land, effect will be given to that intent.

**10. Ejectment § 10—**

Evidence that the differing descriptions in the deeds in petitioners' chain of title did in fact describe the land in dispute, together with testimony of a surveyor that the lands described in the respective descriptions covered substantially the tracts as described in the petitions, is sufficient to overrule respondents' motion to nonsuit in an action to try title to the land.

**11. Appeal and Error § 51—**

Judgment of nonsuit cannot be sustained where the evidence is sufficient to make out a *prima facie* case even though, in the absence of objection to the evidence, all of the evidence tending to establish the affirmative of the issue is incompetent.

PARKER, J., not sitting.

APPEAL by petitioners from *Bone, J.,* March 1958 Term of ONSLOW.

*J. T. Gresham, Jr., Nere E. Day, Jr., and Nere E. Day for petitioner appellants.*
*Beasley & Stevens for respondent appellees.*

RODMAN, J.   This is a partition proceeding instituted 21 April 1958. A prior proceeding for the same purpose involving the same land resulted in an involuntary nonsuit which was affirmed on appeal. *Skipper v. Yow,* 238 N.C. 659, 78 S.E. 2d 600; 240 N.C. 102, 81 S.E. 2d 200.

The petition alleges that petitioners and defendants are the owners of a tract of land there described which, it is alleged, was surveyed by A. Cheney in July 1926. Following the description of the property alleged to be owned by petitioners and defendants is this allegation: "That the ownership of the defendants in said tract of land is subject to numerous conveyances they have made from the above bounds, as petitioners are informed and believe, and also to final determination of the number and identity of the heirs at law of the late Dempsey Williams, as to some of whom there seems to be some controversy and from two of whose heirs at law (as alleged, John Williams and Jane Williams Cummings) the late G. S. Gray obtained a conveyance reciting that the interest conveyed was 2/96 of the whole tract." It is

then averred: "Subject to conditions stated in the foregoing section of this petition . . ." Then follows an averment that defendants own 31/48 of the land, petitioners K. C. Sidbury and wife own 77/256, Mary S. Skipper, 11/256, Winston Williams and others, the heirs at law of the late E. B. Williams, 1/96 of the land.

The petition on its face presents serious questions with respect to the power of the court to enter a decree directing partition. The petition should describe the land owned by petitioners and defendants as tenants in common. Here by express language the petition negatives the idea that defendants were at the time of the filing of the petition cotenants of all the land as to which partition was sought. What area petitioner asserts defendants presently own an interest in as cotenants is left in the realm of speculation. Not only should the petition adequately describe the very land with respect to which cotenancy exists, but it should affirmatively appear that all parties who claim an undivided interest in the property are properly before the court before it proceeds to direct partition. *Alsbrook v. Reid,* 89 N.C. 151; *Ledbetter v. Gash,* 30 N.C. 462; *Richardson v. Barnes,* 238 N.C. 398, 77 S.E. 2d 925; *Lockleair v. Martin,* 245 N.C. 378, 96 S.E. 2d 24; 68 C.J.S. 140, 145, 146; 40 Am. Jur. 52.

Defendants did not elect to challenge by appropriate motions the sufficiency of the petition. They answered and denied that petitioners owned any interest in the land described. The answer had the effect of converting a special proceeding for partition into a civil action to try title. *Murphy v. Smith,* 235 N.C. 455, 70 S.E. 2d 697; *Gibbs v. Higgins,* 215 N.C. 201, 1 S.E. 2d 554.

The burden is on petitioners to establish that they own some interest in the land which entitles them to the present right to possession. They do not have to establish that they are the owners of the exact interest claimed in their pleading. If the evidence is sufficient to permit a jury to find that petitioners in fact own some share, they are entitled to have the issue of ownership submitted to the jury.

Petitioners here elected to establish their title and right to possession by the sixth method enumerated in *Mobley v. Griffin,* 104 N.C. 112, that is, by tracing their title and defendants' title to a common source. Petitioners, to succeed, must establish not only that the parties trace their titles to the same person but trace title to the same land to the same person. The trial court, when plaintiffs rested, was of the opinion that the evidence was insufficient to be submitted to the jury and therefore sustained defendants' motion to nonsuit. We are now called upon to answer the same questions stated in the opinions rendered on appeal in the prior proceeding, but the answers now given must be in the light of the evidence appearing in the present record.

The land in controversy is situate on the Atlantic Ocean, having, according to petitioners' contention, a frontage on the ocean of approximately 9800 feet. It is situate between the ocean and Stump Sound. It is, petitioners contend, the land originally owned by M. L. F. Redd, who on 19 March 1870, by deed recorded Book 31, p. 9, conveyed an undivided one-half interest therein to Elijah Williams. Petitioners assert (1) they are the heirs of Elijah Williams and acquired an undivided interest by descent, and (2) they have purchased additional undivided interests from other heirs of Elijah Williams. Thus they say they have traced their title to M. L. F. Redd. They assert that certain of the heirs of Elijah Williams conveyed to G. S. Gray and that defendants purchased the Gray title. They assert that the only heir of M. L. F. Redd conveyed to Gray and that defendants acquired this interest from Gray. Thus they assert that they have established their title tracing back to Elijah Williams and his grantor, M. L. F. Redd, and have shown defendants' title, which they likewise trace back to their ancestor, Elijah Williams and also to Elijah Williams' ancestor, M. L. F. Redd. The evidence must establish both the descent and identity of property. If either fails, the nonsuit was correctly entered.

Reviewing the evidence to find the answer to each question, we deal first with the question of descent.

Petitioners offered parol evidence to the effect that Mary S. Skipper and K. C. Sidbury were descendants of Henrietta Sidbury, who prior to marriage was Henrietta Williams. Henrietta Williams was a sister of Elijah Williams.

Winston Williams is a grandson of Dempsey Williams. Dempsey Williams was a descendant of John Williams. John Williams and Jane Williams Cummings are children of Dempsey Williams and grandchildren of John Williams. There is no parol evidence tending to establish the relationship of John Williams to Elijah Williams. The parol evidence enumerates all of the descendants of Henrietta Sidbury. All except Mrs. Skipper have conveyed what they assert is the land in controversy to K. C. Sidbury. He has conveyed to his wife, Charity Sidbury.

The parol evidence is sufficient to establish that Mary S. Skipper and K. C. Sidbury and his grantors are collateral relations of Elijah Williams, but that fact does not suffice to show that they inherited the property of Elijah Williams. Real property passes to collateral relations only in the absence of lineal descendants. G.S. 29-1, Rules 1, 3, and 5. Death being established, there is a presumption of law that the deceased died intestate. *Barham v. Holland,* 178 N.C. 104, 100 S.E. 186, cited with approval in *Skipper v. Yow,* 240 N.C. 102, 81 S.E. 2d 200. There is, however, no presumption as to how the in-

heritance is cast. Did he leave descendants? That is a question which must be established by proof. *Murphy v. Smith, supra; Trust Co. v. Deal,* 227 N.C. 691, 44 S.E. 2d 73.

Petitioners, to establish inheritance by the brothers and sisters, rely on recitals contained in a deed which they offered in evidence. This deed, made by descendants of Henrietta Sidbury, a sister of Elijah Williams, to petitioner K. C. Sidbury conveys grantors' interest in land which is asserted to be the land now in controversy. The deed is dated 12 July 1926. It recites: "That, whereas, the late Elijah Williams died in Onslow County on or about the .... day of ...... ......, 1876, intestate and seized of a certain undivided interest in the tract of Beach and Marsh land hereinafter described, as by reference to deed from M. L. F. Redd to Elijah Williams, recorded in Book 30, page 9, of the registry of deeds for Onslow County, will more fully appear; and, wereas, the said Elijah Williams was unmarried and his interest in said land hereinafter described descended to his next of kin, to wit, Kitty Ennett, wife of John S. Ennett; Henrietta Sidbury, wife of the late Richard W. Sidbury; John Williams and Ben Williams, sisters and brothers respectively, of said Elijah Williams . . ."

Are the recitals in this deed competent as evidence which a jury could accept as establishing the fact that Elijah Williams had no descendants but did have brothers and sisters who survived him? If so, petitioners have made a *prima facie* showing of inheritance to some interest in the land which Redd conveyed to their ancestor in 1870. Attention was directed to this question, but it was left unanswered in *Skipper v. Yow,* 240 N.C. 102, 81 S.E. 2d 200. Attention was then pointly directed to the fact that a material difference exists between recitals in an ancient document and recitals in an instrument which fails to meet the qualifications requisite to classify it as an ancient document.

We reach the conclusion that the recitals here in question are competent evidence. It has been established by parol evidence that the persons who made the declarations are the nephews, nieces, and great-nephews of the person with whom the relationship is asserted. They were qualified to speak with respect to family history. *Ashe v. Pettiford,* 177 N.C. 132, 98 S.E. 304. It affirmatively appears that at least some of those who spoke through the recitals are dead. It is not suggested that any controversy existed at the time they spoke with respect to the facts which entitled them to inherit from their uncle Elijah. The instrument containing the statement, was, when offered as evidence, more than thirty years old. No suggestion is made that the instrument is spurious or has been altered in any respect. It meets the test of an ancient document.

Our conclusion is supported by well-considered opinions elsewhere.

In *Rollins v. Atlantic City R.R.*, 62 A 929, the recitals under consideration were in deeds and read: "She being the issue and heir at law of George Ashebridge"; and "Sarah Hastings is a widow and that she was formerly Sarah Richards, and the sister of Mary Ball who was the mother of Joseph Ball, deceased." The Supreme Court of New Jersey, after reviewing the authorities, reached the conclusion that the recitals in the deeds, ancient documents, were competent and sufficient to justify a finding in accordance with the facts recited. *Moses v. Chapman*, 280 S.W. 911, held competent and sufficient this language in a power of attorney: ". . . for me and in my name and place and stead, as the father and sole heir of George Dyer, deceased, late a soldier in the Texas revolution . . ." Similar conclusions have been reached in *Fielder v. Pemberton*, 189 S.W. 873; *Sun Pipe Line Co. v. Wood*, 129 S.W. 2d 704; *Neustadt v. Coline Oil Co.*, 284 P 52; *Kirkpatrick v. Tapo Oil Co.*, 301 P 2d 274. See also annotations 6 A.L.R. 1437; Jones Commentaries on Evidence, 2d ed., 2057 and 2058; 32 C.J.S. 662 and 689; 20 Am. Jur. 794.

Petitioners offered in evidence a deed from John Williams and Jane Williams Cummings to G. S. Gray. This deed dated 17 July 1926, like the deed from Sidbury to Sidbury referred to above, recites that Elijah Williams died in 1876, intestate, "and seized of a certain undivided interest in the tract of Beach and Marsh land hereinafter described, as by reference to deed from M. L. F. Redd to Elijah Williams, recorded in Book 31, page 9, of the registry of deeds for Onslow County . . ." It also recites that Elijah Williams was unmarried, that his interest descended to his next of kin, that the grantors were children and heirs at law of Dempsey Williams, and that Dempsey Williams was one of four children of John Williams. The description in this deed is identical with the description in the deed from Sidbury to Sidbury. This deed from Williams and Cummings to Gray was offered by petitioners as a link in defendants' title.

Further to trace title by defendants' to a common source, petitioners offered a deed from Hill E. King and wife, Susan, to G. S. Gray. This deed is dated 28 June 1926. The description set out in that deed is not verbatim the same as in the deed from Williams and Cummings to Gray and the deed from Sidbury to Sidbury, petitioners, but petitioners assert that in fact the description covers the identical land. That deed recites ". . . the share herein released and conveyed being the undivided share of said Susan R. King in said lands as the daughter and only heir of M. L. F. Redd, deceased." Petitioners offered the will of G. S. Gray, probated in 1931, which appointed R. N. Summersill as executor and as trustee and authorized and empowered the executor and trustee to sell and convey any of testator's real estate in the executor's discretion; and a deed from Summersill as trustee,

acting pursuant to the authority given, to defendant E. L. Yow. This deed, dated July 1946, conveys a tract of land described by course and distance which adjoins the Atlantic Ocean and which is recited as "containing 356 acres more or less and being substantially the same land as was conveyed to G. S. Gray by Hill E. King and Susan R. King . . ."

Petitioners offered in evidence deeds to them from other parties who, according to the evidence, were heirs at law of Elijah Williams. We perceive no evidence in the record tending to locate the land described in these other deeds. They are not material to a determination of the appeal.

Petitioners were entitled to have an appropriate issue submitted to the jury if, in addition to the evidence recapitulated above, the evidence is sufficient for a jury to find that the land described in the petition for partition and hence the subject of the controversy is within the boundaries set out in the deeds put in evidence.

We consider now the evidence offered to establish the fact of identity. Notwithstanding the recital of identity of lands, the descriptions used in the deed from Sidbury to Sidbury and in the deed from Williams and Cummings to Gray, which are identical, do differ from the description used in the deed from Redd to Elijah Williams, recorded in Book 31, page 9. The beginning point in the latter deed is at the mouth of Muddy Creek. The next call in that deed goes to the sea. There is no call in that deed for Swash Creek. The other deeds begin at the sea. They do not refer to Muddy Creek but call for Swash Creek as a boundary.

Notwithstanding the difference in beginning points and other descriptive language, the differing language may in fact fit the same body of land.

If the grantors Sidbury, Williams, and Cummings, intended to convey the identical land described in the deed from Redd to Williams and that fact is apparent upon an examination of the deeds, effect will be given to that intent. *Franklin v. Faulkner*, 248 N.C. 656; *Benton v. Lumber Co.*, 195 N.C. 363, 142 S.E. 229; *Quelch v. Futch*, 172 N.C. 316, 90 S.E. 259; *Gudger v. White*, 141 N.C. 507.

Petitioners did not, however, rest their case on the recitals in the deeds to establish the identity of the land conveyed by these deeds. Meriwether Lewis, a registered surveyor with more than thirty years' experience, testified without objection (1) that the land described in the deeds from Sidbury to Sidbury, from Williams and Cummings to Gray, and from King to Gray were substantially the same tracts as described in the petition, and (2) the description in the deed from Redd to Williams and from Gray's executor and trustee to Yow covered all but a small portion at the north end of this land.

This testimony was before the jury without objection. Credibility only was challenged. We are not now called on to pass upon the competency of this witness to testify and identify the lands in the manner described by him. Where testimony sufficient if true to establish a fact at issue has been received in evidence without objection, a nonsuit cannot be sustained even if the only evidence tending to establish the disputed fact is incompetent. *Frazier v. Gas Co.,* 247 N.C. 256; *Kientz v. Carlton,* 245 N.C. 236, 96 S.E. 2d 14; *Early v. Eley,* 243 N.C. 695, 91 S.E. 2d 919; *Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316.

Since petitioners have offered evidence sufficient to justify a jury in finding that petitioners and defendants each traced title to the same source for differing fractional interest in the land in controversy, they were entitled to have an issue submitted to the jury to determine their asserted title and hence cotenancy. Petitioners' ownership of an undivided interest was not defeated by failure to show who the other cotenants were or to show the share owned by each cotenant.

To avoid repetitious litigation, attention is called to the fact that no judgment can be entered which will bind parties having an interest in the land in controversy who are not now before the court.

Reversed.

PARKER, J., not sitting.